**In the Interest of C.W.**

**Appeal of Anthony R. Tunnell, Esquire.**

Superior Court of Pennsylvania.

Argued Aug. 19, 2008.

Filed Oct. 24, 2008.

Samuel C. Stretton, West Chester, for appellant.

BEFORE: STEVENS, MUSMANNO, and BENDER, JJ.

OPINION BY STEVENS, J.:

■ ¶ 1 This is an appeal from the order entered in the Court of Common Pleas of Philadelphia County finding Appellant Anthony R. Tunnell, Esquire to be in contempt, directing him to return all monies paid to him, and replacing him with new court-appointed counsel in the underlying involuntary termination of parental rights case.[1] On appeal, Attorney Tunnell contends, *inter alia*, that the evidence was insufficient to sustain a finding of contempt.[2] We reverse.

¶ 2 The relevant facts and procedural history are as follows: In November of 2003, due to physical abuse, C.W. was placed in foster care, and the Philadelphia Department of Human Services Children and Youth Division (DHS) filed a petition seeking to have C.W. declared dependent. Eventually, C.W. was declared dependent and the goal was reunification; however, on May 31, 2005, DHS filed petitions for the involuntary termination of Mother's and Father's parental rights and sought to change the goal to adoption. Attorney Tunnell was appointed by the trial court to represent Father's interests, and on August 9, 2007, the matter proceeded to an evidentiary hearing, at the conclusion of which the trial court indicated it would make a decision in open court on October 30, 2007. The trial court directed that "[b]riefs from the City and father's counsel are due 10/15/07." N.T. 8/9/07 at 44.

¶ 3 On October 1, 2007, Attorney Tunnell sent the following correspondence to the trial court judge:

I represent the Father, ... in the above matter which was listed before

---

1. We note that "[a]n order of contempt is final and appealable when the order contains a present finding of contempt and imposes sanctions." *In re K.K.*, 957 A.2d 298, 303 (Pa.Super.2008) (citations omitted). Therefore, the order at issue is final and appealable.

2. Attorney Tunnell also raises issues concerning the procedures the trial court followed in imposing contempt. However, in light of our conclusion *infra*, we find it unnecessary to discuss the remaining issues.

Your Honor for a contested goal change/termination hearing. Please consider the following as the Father's letter brief in opposition to the termination of his parental rights.

[DHS] was found to have not made reasonable efforts by the Court on at least one occasion. The Father contends that reasonable efforts were not made toward him on any occasion.

The Father also contends that there was not sufficient consideration of the bond between the Father and his son as [DHS] did not address the contact Father had with the child during the time the child was committed to the Department. Father testified to said contact.

The Department's goal of this case was Permanent Legal Custody and it was changed due to the Mother's status and no consideration was given to the Father's status.

Due to all of the above, the Father prays that this Court will not terminate his parental rights.

Father's Letter Brief dated 10/1/07.

¶4 On October 30, 2007, the parties appeared before the trial court, and the following relevant exchange occurred:

THE COURT: I received the notes of testimony and I think I got a submission from everybody. Mr. Tunnell's brief was a little thin. It's really not a brief.

MR. TUNNELL: It's a letter brief, Your Honor.

THE COURT: No, it's not. It's a letter.

So, we are going to bring this case back again and I am going to give Mr. Tunnell a chance to submit a brief, because I want to see what your client's position is—

MR. TUNNELL: Your Honor—

THE COURT: And that brief will comply with Rules 2111 through 2135 of the Appellate Rules of Procedure.

MR. TUNNELL: Your Honor, this isn't an appellate situation right now.

May I put my objection on the record?

THE COURT: I have your objection.

MR. TUNNELL: May I state the—

THE COURT: Go ahead.

MR. TUNNELL: Your Honor, I have an objection because Your Honor had told me that the reason for these briefs was an Order for you to clean up any possible appellate issues, and I believe that is a violation of my client's due process. My client, just like anyone else, has a right to appeal if any mistakes occur at trial. My brief is what it is, Your Honor. I can make it longer, more detailed, but I don't have to put in any appellate issues, because this isn't an appellate proceeding.

THE COURT: You done?

MR. TUNNELL: Yes.

THE COURT: So, we will get a date. Mr. Tunnell will file a brief as I have described in the DRO so there will be no confusion, and then we will take another look at the case.

MR. TUNNELL: And, of course, Your Honor, I do object to filing a brief which you say should be under the Appellate Rules.

THE COURT: I heard your objection.

MR. TUNNELL: And I might only file what is necessary for this case at the trial level.

* * *

THE COURT: We will bring this case back and—let's see if we have a date in early December.

(Discussion regarding next court date.)

THE COURT: How about the end of November?

MR. TUNNELL: That will not give me sufficient time, if you want an appellate brief.

THE COURT: The brief is due November 9th.

MR. TUNNELL: Your Honor, I don't understand how you can order me to file a brief at a trial level.

THE COURT CLERK: 11/19 at 10:30.

(Whereupon, the Court Clerk reads the Order.)

THE COURT: If there is nothing else, that concludes this matter. If you wait outside, you will get a copy.

The record should reflect that as Mr. Tunnell was leaving the courtroom, he said he does not intend to file an appellate style brief. And the Court should prepare for a contempt hearing.

N.T. 10/30/07 at 2–5.

¶ 5 On November 9, 2007, Attorney Tunnell filed a "Brief in Opposition to the Involuntary Termination of Father's Parental Rights," which provided in its entirety the following:

I. *Procedural Posture*

A goal change/termination of parental rights hearing was held before the Honorable Charles Cunningham on August 9, 2007. At the conclusion of that proceeding, the Court ordered the Department of Human Services (DHS) and the parents' counsel to file briefs.

II. *Statement of the Case*

The Department of Human Services alleged that the potential rights of the father ... should be involuntarily terminated pursuant to § 2511(a)(1), (2), (5) and (8) of the Adoption Act, 23 Pa.C.S.A. § 2511 *et seq.* The Department has al-

leged that [Father] has failed to perform his parental duties.

The Father asserts now, and through his testimony, that he has maintained contact with his child through the life of this dependency case. Further, Father contends that the child wants to maintain a relationship with his father.

III. *Argument*

The Department of Human Services was found to have not made reasonable efforts by the Court on at least one occasion. The Father contends that reasonable efforts were not made toward him on any occasion.

The Father also contends that there was not sufficient consideration of the bond between the Father and his son as the Department did not address the contact Father had with the child during the time the child was committed to the Department. Father testified to said contact.

The Department's goal of this case was Permanent Legal Custody and it was changed due to the Mother's status and no consideration was given to the Father's status.

The Father's parental rights should not be terminated because the DHS did not meet its burden.

IV. *Conclusion*

Due to the above, the Father prays that this Court will not terminate his parental rights.

Brief in Opposition to the Involuntary Termination of Father's Parental Rights filed 11/9/07 at 1–2.

¶ 6 The matter proceeded to another hearing on November 19, 2007, at which the following relevant exchange occurred:

THE COURT: With regard to Father, Father is still incarcerated?

[DHS SOCIAL WORKER]: Yes, he is, Your Honor.

THE COURT: And with regard to Mother, Mother is just not participating?

[MOTHER'S COUNSEL]: Your Honor, she signed voluntaries.

THE COURT: All right.

We are here today for a decision. But before making a decision, I asked for briefs.

Mr. Girard, I would ask you to show these Exhibits to Mr. Tunnell.

Can you identify what has been marked as Court Exhibits 1 and 2, Mr. Tunnell?

MR. TUNNELL: Yes, Number 1 was a letter brief submitted to Your Honor in a timely fashion.

And Number 2 was a rewriting of that brief based on Your Honor's orders[.]

THE COURT: Give them to Ms. Darby, and she will put them in the file.

[MR. TUNNELL]:[3] The briefs are the same, just different headings. I couldn't do them according to the appellate rules, Judge, because I have no Judge's opinions, no statement of jurisdiction. I found that the other attorney didn't do it according to appellate rules, and it was also a waiver on the part of the Child Advocate.

THE COURT: I am just trying to give you some guidance. A brief has to cite law, has to cite the record. What you call your letter brief is just a letter. What you then call your brief is your letter with a caption. So, I find that you have not complied with the Court's order.

MR. TUNNELL: Well, Your Honor, I did—

THE COURT: And I hold you in contempt.

MR. TUNNELL: Your Honor, I know I have a Rule to Show Cause. And, Your Honor, I talked to appellate attorneys. There is nothing in the appellate rules that say briefs must be done, and there is no solution or no remedy for briefs, when a brief is not done, in the entire Court system throughout Pennsylvania, other than waiving that particular issue. So, this would be a first, being held in contempt for what [*sic*] a brief you think is not sufficient. But you also have to deal with the fact that you waived it for the Child Advocate—for whatever reason, I don't know—and the brief by the City Solicitor is not according to appellate procedure either.

THE COURT: I have two choices. I can either get a brief from you or I can get a brief from someone else.

MR. TUNNELL: Well, Your Honor, the brief that you are asking for, actually—

THE COURT: We passed that point. I am going to get a brief, a brief that cites case law, refers to the record, analyzes the evidence—

MR. TUNNELL: I don't have the record, and I need the Judge's opinion in order to make the brief that you are asking for. You are asking for a brief based on appellate rules. I couldn't do the Statement of Jurisdiction because it didn't apply. I couldn't do an objection to the Order, because there was no order. I need your opinion, if you expect me to do a brief according to appellate rules. Under the appellate rules, those things you are stating are not required in a brief. The only thing that is a requirement in a brief is a maximum number of words or pages that you—and there is no minimum.

---

**3.** The transcript identifies the speaker as being Mother's attorney; however, based on the context, it is obvious Attorney Tunnell is the person speaking at this point.

So, I complied with the rules, Your Honor, I don't know what you want me to do. You led me to the rules, and I complied with them the best I could with the trial court issue. The very best I could. And I am not doing this, Your Honor, just to try to usurp the process. I am doing this because I truly believe, as you had told me, that submitting a brief so you could clean up the record for future appellate issues, is a violation of my client's due process.

THE COURT: Are you done?

MR. TUNNELL: Yes.

THE COURT: I am going to give you two choices. The first choice is that you spend time with the Sheriff until you give me a brief.

MR. TUNNELL: Well—

THE COURT: Mr. Tunnell, that's the first choice.

The second choice is that I remove you from the case, I appoint new counsel, you turn over your file and you return the monies you have been paid and I get the brief from new counsel.

MR. TUNNELL: I have submitted a brief, Judge. I have submitted it twice. I don't know what you want me to do. I have submitted a brief twice.

THE COURT: Do you have a preference as to which of those two you would like me to impose?

MR. TUNNELL: It's up to you, Judge. I have submitted a brief twice. I don't know what else to do. You gave me the orders, and I have complied with those orders by submitting a brief. If this is something between you and I, there is nothing I can do about it. I am trying my very best to represent my client. But if this is between you and I, there is nothing I can do. I have submitted a brief, Your Honor. I don't know what else you want me to do.

THE COURT: Okay. Your appointment is vacated. You will return to the Court the monies you have been paid on this case already. And you will turn over your file, forthwith to counsel.

MR. TUNNELL: And, Your Honor, I will be appealing that, so I would ask that any orders, I will expect, will be stayed until the appeal.

THE COURT: Absolutely not. The whole purpose of civil contempt is to get you to comply with the orders and I am not going to delay this child's case—

MR. TUNNELL: I am not in contempt, Your Honor. I know I'm not. You can do what you choose. You can't hold me in contempt unless you give me a due process hearing. If you choose to do what you just decided, that's fine, and I will comply with that. But I am not in contempt. I don't give disrespect to the Court. I have been practicing almost 20 years and I have never been threatened with contempt by anyone else but Your Honor.

THE COURT: Okay. So, Mr. Waldman, are you on-call counsel for today?

MR. WALDMAN: Yes, I am.

THE COURT: Are you able to review the record? The notes of testimony have been prepared for some time. They are not long. You have the benefit of Mr. Tunnell's two letters and whatever else he has in his file. Are you able to do a brief in three weeks?

[MOTHER'S COUNSEL]: Since Mr. Waldman was not here, would he need notes of testimony to see what the testimony was that he is referring to?

THE COURT: The notes of testimony are 24 pages long.

MR. WALDMAN: I don't know that I can do much better than Mr. Tunnell.

THE COURT: I will tell you what I want. I want a brief that cites law,

unlike Mr. Tunnell's letter. I want a brief that refers to the record and the evidence in the case, and if there is an objection, that it makes that objection, and applies the law to the record and adequately represents your client's interest.

MR. WALDMAN: Obviously, I will need the whole file, or access to it. I would [be] more comfortable with 30 days than three weeks.

THE COURT: The problem is we are going to have to bring it back in January. We have already delayed this [case by] giving Mr. Tunnell two opportunities to submit a brief.

MR. TUNNELL: Which I did, both times, Your Honor, for the record.

[THE CHILD ADVOCATE]: Is it opposing argument?

MR. TUNNELL: I don't know what it is. I assume the brief is in lieu of opposing argument. I have never had an explanation for that. I have never had an explanation for what the brief is, because every time we come, he wants something new.

THE COURT: Well, we could bring it back on January 2nd. We are just coming back for a decision anyway.

MR. WALDMAN: When do you need the briefs by?

THE COURT: How's December 16th?

MR. WALDMAN: I will do my best.

THE COURT: That's four weeks.[4]

MR. WALDMAN: Okay.

MR. TUNNELL: That concludes my business. May I be excused?

THE COURT: You are excused.

The order that I am signing says that replacement counsel will receive this as a new appointment, which means he will come into this case—he will be paid for this case as if he was the first lawyer appointed on the case.

N.T. 11/19/07 at 4–11 (footnote added).

¶ 7 Thereafter, the trial court filed an order directing Attorney Tunnell to return all monies paid to him, removing him as counsel, and appointing new counsel. This timely appeal followed. On December 14, 2007, the trial court ordered Attorney Tunnell to file a Pa.R.A.P. 1925(b) statement within 21 days,[5] and notice of the order was sent via first class mail to Attorney Tunnell's counsel, Samuel C. Stretton, Esquire on December 14, 2007. On December 28, 2007, Attorney Tunnell filed a Pa. R.A.P. 1925(b) statement, and on January 2, 2008, he filed an amended Pa.R.A.P. 1925(b) statement. On March 11, 2008, the trial court filed a Pa.R.A.P. 1925(a) opinion.

¶ 8 Attorney Tunnell's first issue is the evidence was insufficient to hold him in contempt under 42 Pa.C.S.A. § 4132(2) or (3).[6]

■■■ ¶ 9 Initially, we note that "trial courts in Pennsylvania have an inherent power to impose summary punishment for contempt of court. This power is set forth in the Judicial Code...." *Commonwealth v. Pruitt,* 764 A.2d 569, 573 (Pa.Super.2000). Specifically, the Judicial Code provides that:

**§ 4132. Attachment and summary punishment for contempts**

---

**4.** Subsequently, the trial court determined that the first available court date was January 24, 2008, and permitted Attorney Waldman to file his brief by January 2, 2008. N.T. 11/19/07 at 12–13.

**5.** Newly-amended Pa.R.A.P. 1925(b), which became effective on July 25, 2007, is applicable to the instant appeal.

**6.** We note that Attorney Tunnell adequately raised his sufficiency of the evidence claims in his initial Pa.R.A.P. 1925(b) statement.

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following case:

(1) The official misconduct of the officers of such courts respectively.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

42 Pa.C.S.A. § 4132 (bold in original).[7]

Contempt of court may be classified as civil or criminal in nature. The distinction between the two categories lies in the purpose behind the court's finding of contempt. If the dominant purpose of the court is to prospectively coerce the contemnor into compliance with the court's directive, the adjudication is one of civil contempt. However, if the court's dominant purpose is to punish the contemnor for disobedience of the court's order, the adjudication is one of criminal contempt.

*Pruitt,* 764 A.2d at 574 (citations omitted).

■ ¶ 10 In the case *sub judice,* we conclude that the trial court's unconditional directive that Attorney Tunnell return all monies paid to him and replacing him with new court-appointed counsel establishes that the trial court has adjudicated Attorney Tunnell to be in direct criminal contempt.[8] *See Yoskowitz v. Yazdanfar,* 900 A.2d 900, 903 (Pa.Super.2006) ("Since

the dominant purpose of the contempt citation is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt.") (citation omitted); *Pruitt, supra* (holding court imposed criminal contempt when it imposed a $35.00 unconditional fine).

When reviewing a contempt conviction, much reliance is given to the discretion of the trial judge. Accordingly, we are confined to a determination of whether the facts support the trial court's decision. Each court is the exclusive judge of contempts against its process, and on appeal its actions will be reversed only when a plain abuse of discretion occurs. As this Court [has] stated:

> The ability to raise a criminal contempt citation empowers a trial judge with the ability to maintain command over his or her courtroom. Effectively, the criminal contempt sanction gives credence to a judge's status as commander in chief over his or her courtroom. If we continually carve away at this power, the sanctity and balance of the courtroom may be in jeopardy. In connection with this sentiment, however, this Court has also noted that a trial court should not use the drastic sanction of finding a person in criminal contempt when a lesser measure will suffice.

*Pruitt,* 764 A.2d at 574 (quotations, quotation marks, and citations omitted).

---

7. We note that Subsection 4132(1) is not at issue in this case.

8. During the November 19, 2007 hearing, the trial court made a passing reference to "civil contempt;" however, in its Pa.R.A.P. 1925(a) opinion, the trial court explicitly stated that it found Attorney Tunnell to be in criminal contempt and analyzed this case as such. Moreover, we conclude Attorney Tunnell was

found to be in direct versus indirect criminal contempt. "A direct criminal contempt consists of misconduct of a person in the presence of the court, or disobedience to or neglect of the lawful process of the court, or misbehavior so near thereto as to interfere with the immediate business of the court." *Fenstamaker v. Fenstamaker,* 337 Pa.Super. 410, 487 A.2d 11, 14 (1985) (citation omitted).

¶ 11 In the present case, the trial court found Attorney Tunnell to be in criminal contempt for failing to file a sufficient brief in support of his client's position. Specifically, under Subsection 4132(2), the trial court deemed the quality of Attorney Tunnell's briefs to be a violation of Subsection 4132(2) since Attorney Tunnell did not cite to relevant authority or to the record.[9]

¶ 12 Regarding Subsection 4132(2), a finding of contempt pursuant to this subsection must be supported by the following four elements:

(1) The [court's] order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;

(2) The contemnor must have had notice of the specific order or decree;

(3) The act constituting the violation must have been volitional; and

(4) The contemnor must have acted with wrongful intent.

Further, unless the evidence establishes an intentional disobedience or an intentional neglect of the lawful process of the court, no contempt has been proven. Moreover, a conviction for criminal contempt requires proof beyond a reasonable doubt.

*Commonwealth v. Kolansky*, 800 A.2d 937, 940 (Pa.Super.2002) (quotation, quotation marks, and citations omitted).

¶ 13 This Court has held that "[a] degree of intentional wrongdoing is an ingredient of the offense of criminal contempt. Willfulness is, of course, an element of a criminal contempt and must be proved beyond a reasonable doubt." *In the Matter of James*, 307 Pa.Super. 570, 453 A.2d 1033, 1034 (1982) (quotations and quotation marks omitted).

¶ 14 The record reveals that the trial court ordered the parties, including Attorney Tunnell on behalf of the father, to file briefs by October 15, 2007. At this time, the trial court provided no direction as to what specific information counsel was to include in the brief. Attorney Tunnell filed a timely document, which he labeled a "letter brief." At the next scheduled hearing on October 30, 2007, the trial court indicated the brief was "a little thin," N.T. 10/30/07 at 2, and ordered Attorney Tunnell to file another brief so that the trial court could "see ... your client's position...." N.T. 10/30/07 at 2. Although the brief was to be submitted to the trial court in opposition to the involuntary termination of parental rights, the trial court directed that the brief "will comply with Rules 2111 through 2135 of the Appellate Rules of Procedure." N.T. 10/30/07 at 3. Attorney Tunnell objected on the basis the case was not at the appellate level and informed the trial court that he was going to file a brief, which would be appropriate for the trial level. N.T. 10/30/07 at 5.

---

9. This Court has held that Subsection 4132(2) relates to disobedience or neglect by attorneys to the "lawful process of the court." This Court has found a counsel's failure to appear for a scheduled court appearance, a counsel's failure to communicate with the opposing party regarding transcripts, a counsel's failure to file timely points for charge, and a counsel's failure to file an accounting to fall within the purview of Subsection 4132(2). *See Commonwealth v. Kolansky*, 800 A.2d 937 (2002); *Pruitt, supra; Estate of Baehr*, 408 Pa.Super. 172, 596 A.2d 803 (1991); *Weingrad v. Lippy*, 300 Pa.Super. 76, 445 A.2d 1306 (1982). Moreover, this Court has generally held that the failure to provide information to the court relates to the lawful process of the court. *See Appeal of J. Shane Creamer*, 365 Pa.Super. 170, 529 A.2d 27 (1987). Therefore, we conclude that a finding of contempt based on the quality of the briefs submitted by Attorney Tunnell falls within the purview of Subsection 4132(2).

¶ 15 On November 9, 2007, Attorney Tunnell filed a timely brief labeled "Brief in Opposition to the Involuntary Termination of Father's Parental Rights." In this brief, Attorney Tunnell set forth a brief description of the procedural history, his statement of the case, an argument, which was substantially similar to that presented in his previous "letter brief," and a conclusion. At the next scheduled hearing on November 19, 2007, Attorney Tunnell indicated that he was unable to draft an appellate brief because he had no judge's opinion and no statement of jurisdiction. N.T. 11/19/07 at 4–5. He also noted that the other parties had not filed an appellate-style brief. The trial court responded that, in pointing Attorney Tunnell to the Rules of Appellate Procedure, it was seeking to give Attorney Tunnell guidance so that he would cite law and to the record. N.T. 11/19/07 at 5. The trial court concluded that Attorney Tunnell had not complied with the trial court's order to file an adequate brief and held Attorney Tunnell in contempt. N.T. 11/19/07 at 5. Attorney Tunnell then explained to the trial court the reasons he could not file a brief, which would be in compliance with the rules of appellate procedure. Specifically, he indicated he did not have the record, a judge's opinion, or a statement of jurisdiction. N.T. 11/19/07 at 6. Attorney Tunnell then informed the trial court that he complied with the trial court's direction the "very best he could," he does not have disrespect for the court, and he was not trying to usurp the process.

■ ¶ 16 Based on the aforementioned, we conclude there is no showing of either a wrongful intent or the violation of a clear, definite order. While the trial court ultimately indicated it was seeking to have Attorney Tunnell file a brief with citation to relevant cases and the record, and Attorney Tunnell's briefs do not do so, we find no evidence of either an intentional failure to obey the court order or acting in reckless disregard of the order. *Pruitt, supra.* After Attorney Tunnell filed his initial "letter brief," the trial court indicated at the October 30, 2007 hearing that Attorney Tunnell was to file a brief, which complied with the rules of appellate procedure. At this time, Attorney Tunnell explained that, since the matter was at the trial court level, it would be impossible for him to comply with the appellate rules. It bears mentioning that, at the October 30, 2007 hearing, the trial court did not specifically indicate that Attorney Tunnell's "letter brief" was lacking in citation to authority or the record, and Attorney Tunnell's insistence that he was not required to follow the rules of appellate procedure indicate his uncertainty as to precisely what additional information the trial court was seeking. Attorney Tunnell filed a second brief, which included some of the pertinent headings discussed in Pa.R.A.P. 2111. It was at the November 19, 2007 hearing that the trial court explicitly stated for the first time that Attorney Tunnell's brief was deficient since there was no citation to case law or the record, and the trial court summarily found him to be in contempt.[10] While we certainly do not condone Attorney Tunnell's failure to cite to relevant cases and the record, we do not believe that such failure rises to the level of contempt under the particular facts of this case.

¶ 17 Regarding Subsection 4132(3), the trial court indicated that Attorney Tunnell's in-court refusal to file an appropriate

---

**10.** It's noteworthy that, thereafter, when the trial court appointed Attorney Waldman as new counsel and directed him to file a brief, Attorney Waldman stated, "I don't know that I can do much better than Mr. Tunnell." N.T. 11/19/07 at 10.

brief constituted contempt.[11]

¶ 18 In order to sustain a conviction for contempt under 42 Pa.C.S.A. § 4132(3), there must be proof beyond a reasonable doubt of:

(1) misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) which obstructs the administration of justice. [C]ontempt requires actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority. Remarks that are injudicious, or even disrespectful, will not, without more, justify a summary conviction for contempt of court.

*Behr v. Behr*, 548 Pa. 144, 149, 695 A.2d 776, 779 (1997) (citations, quotation marks, and quotation omitted).

¶ 19 Initially, we must determine whether the first element, misconduct, is present. "Misconduct is behavior that is inappropriate to the role of the actor." *Commonwealth v. Williams*, 753 A.2d 856, 861–62 (Pa.Super.2000) (citations omitted) (holding the appellant's verbal epithet and gesture with the middle finger was misconduct). Here, the transcript reveals that, when the trial court informed Attorney Tunnell that his initial brief was "thin" and he was required to comply with the Rules of Appellate Procedure, Attorney Tunnell objected, argued vigorously that he was not required to comply with the rules of appellate procedure, and indicated that such a brief would not be in his client's best interest. N.T. 10/30/07 at 2–5.

Attorney Tunnell's statements that he "might only file what is necessary for this case at the trial level" and departing comments that "he does not intend to file an appellate style brief [a]nd the Court should prepare for a contempt hearing," while perhaps disrespectful, do not rise to the level of misconduct contemplated by Subsection 4132(3).

¶ 20 Moreover, at the next hearing, the only statements made by Attorney Tunnell regarding the brief prior to the trial court finding him to be in contempt was:

The briefs are the same, just different headings. I couldn't do them according to the appellate rules, Judge, because I have no Judge's opinions, no statement of jurisdiction. I found that the other attorney didn't do it according to appellate rules, and it was also a waiver on the part of the Child Advocate.

N.T. 11/19/07 at 4–5.[12] We simply discern no misconduct with regard to Attorney Tunnell's explanation as to the quality and content of his second brief, and having found no misconduct occurred in the presence of the court, we conclude the finding of criminal contempt under Subsection 4132(3) was improper.

We, as judges on an appellate court, are mindful that trial court judges have wide discretion in the management and conduct of trial proceedings. Thus, we are most careful not to second-guess trial court judges in the exercise of their discretion to so manage. Nevertheless, the record before us, in light of relevant

---

**11.** This Court has held that Subsection 4132(3) generally applies to the conduct of attorneys in open court, and therefore, to the extent the trial court found Attorney Tunnell to be in contempt for his in-court refusal to file a different brief, such falls within the purview of Subsection 4132(3).

**12.** We note that, after the trial court held Attorney Tunnell in contempt, he continued to explain vigorously that he was neither required nor able to file a brief according to the rules of appellate procedure. We conclude his zealous argument does not rise to the level of misconduct contemplated by Subsection 4132(3).

case law, and custom, does not support a conviction for criminal contempt. Because the record fails to reflect the requisite proof beyond a reasonable doubt, the contempt citation cannot stand.

*Yoskowitz,* 900 A.2d at 906.

¶ 21 Order Reversed; Jurisdiction relinquished.