J-A01006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| BRUCE A. RUBIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PAUL A.R. STEWART, HELM LEGAL | : | |
| SERVICES, LLC AND ALISHA | : | |
| ALEJANDRO | : | No. 411 EDA 2022 |
| | : | |
| | : | |
| APPEAL OF: PAUL A.R. STEWART | : | |
| AND  HELM LEGAL SERVICES, LLC | : | |

Appeal from the Order Entered January 14, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  181002397

| | | |
|---|---|---|
| BRUCE A. RUBIN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PAUL A.R. STEWART, HELM LEGAL | : | |
| SERVICES, LLC AND ALISHA | : | |
| ALEJANDRO | : | No. 1018 EDA 2022 |
| | : | |
| | : | |
| | : | |
| APPEAL OF: PAUL A.R. STEWART | : | |
| AND  HELM LEGAL SERVICES, LLC | : | |

Appeal from the Order Entered March 15, 2022
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s):  181002397


BEFORE:  LAZARUS, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:            **FILED FEBRUARY 15, 2023**

These consolidated appeals[1] are from two orders entered in the Philadelphia County Court of Common Pleas concerning monetary sanctions imposed against attorney Paul A.R. Stewart (Stewart) and Helm Legal Services, LLC (HLS), defendants in the underlying action asserting wrongful use of civil proceedings. The appeal at Docket No. 411 EDA 2022 is from the January 14, 2022, order granting a motion for sanctions filed by the underlying plaintiff, Bruce A. Rubin (Rubin), and directing Stewart and HLS to pay a monetary sanction of $10,000 — $5,000 payable to Beasley Law (Rubin's counsel) and $5,000 payable to the Office of Judicial Records. The appeal at Docket No. 1018 EDA 2022 is from the order entered March 15, 2022, granting a motion for reconsideration filed by Stewart and HLS, and vacating the January 14th order as to HLS only. In their brief, Stewart and HLS argue the trial court erred and abused its discretion in imposing a $10,000 fine to punish Stewart for misbehavior when there was no evidence he intended to disrupt the proceedings and his actions did not actually do so, and he was not acting as an attorney at the time of the incident. For the reasons below, we vacate the sanctions order at Docket No. 411 EDA 2022 and quash the appeal at Docket No. 1018 EDA 2022.

---

[1] On May 17, 2022, this Court consolidated these appeals *sua sponte*. **See** Order, 5/17/22.

## I.  Facts & Procedural History

By way of background, Stewart and HLS represented a client, Alisha Alejandro (Alejandro), who sued Rubin (an optician), his business, and various optometrists, for, *inter alia*, violations of Pennsylvania's consumer protection law and federal antitrust statutes when Rubin allegedly failed to provide Alejandro with a copy of her eyeglass prescription after an examination.  The case was eventually moved to federal court, where a federal district judge dismissed the state claims on summary judgment, and Alejandro withdrew her federal claims.

Thereafter, Rubin filed an action for wrongful use of civil proceedings against Stewart, HLS, and Alejandro in the Philadelphia County Court of Common Pleas.[2]  The case proceeded to a four-day jury trial commencing on July 14, 2021.  On the second day of trial, Jeffrey Bates, Esquire, was called as a witness for Rubin.  Attorney Bates had represented one of the optometrists who was also sued in the underlying action, but who later settled the claim.  **See** N.T., 7/15/21, at 44-45, 65-66.  Attorney Bates testified regarding his experience dealing with Stewart as opposing counsel, and the reason his client settled despite the lack of merit in the claim.  **See id.** at 49-66.

---

[2] A detailed recitation of the facts underlying the wrongful use of civil proceedings action can be found in the memorandum decision affirming the judgment of that case on appeal.  **See Rubin v. Stewart**, 2554 EDA 2021 & 2555 EDA 2021.

At one point during Bates's direct examination, Stewart's attorney — Christopher Del Bove, Esquire — objected to an exhibit, and requested a sidebar. *See* N.T., 7/15/21 at 66-67. The court decided to permit the jury to take a morning break. *See id.* at 67. After a brief discussion of the objection, the court was in recess. *See id.* at 70. When the court returned, but before the jury was recalled, Rubin's counsel informed the court that "[d]uring the break, [ ] Stewart accosted the witness [Bates] to the point where [Stewart's] counsel had to remove him and threatened to intimidate [the] witness." *Id.* at 72. Attorney Del Bove denied the allegations. *See id.* at 73. The trial court, refused to address the issue at that time so as not to "side-rail or detract" from the trial, but determined that a hearing would be necessary at a later date to consider the allegations. *Id.* at 73-75. Thereafter, Bates resumed his testimony. *See id.* at 76. When the jury broke for lunch, the court again addressed the witness intimidation allegations. It directed Rubin's counsel to file a motion for sanctions, with affidavits and any other documentation, "within ten days of the verdict rendered in [the] case[,]" and Attorney Del Bove to file a response within "20 days thereafter." *Id.* at 82.

On July 19, 2021, the jury returned a verdict for Rubin, and against Stewart, HLS, and Alejandro. The jury awarded Rubin $580,000 for expenses incurred in the underlying action and emotional distress, attributing 50% each to Stewart (and HLS) and Alejandro, as well as punitive damages in the amount of $159,000 against Stewart and $5,399.99 against Alejandro. Both Stewart (and HLS) and Alejandro filed timely post-trial motions, which were

denied by order entered November 22, 2021. Each party then filed a timely appeal to this Court on December 8, 2021.[3]

Meanwhile, on July 29, 2021, ten days after the jury verdict, Rubin filed a motion for sanctions against Stewart. *See* Rubin's Supplemental Motion for Sanctions Against Paul A. Stewart, Esq., 7/29/21. The motion sought to sanction Stewart for a violation of the Pennsylvania Rules of Professional Conduct (Pa.R.C.P. 3.4, 4.4, and 8.4), and witness intimation, and requested counsel fees for "dilatory, obdurate or vexatious conduct" or conduct undertaken in "bad faith" pursuant to 42 Pa.C.S. § 2503(7), (9). *See id.* at 2-3. He sought "at least" $20,000 to (1) reimburse witness Bates for his time, (2) reimburse Rubin's counsel for his time litigating the motion, and (3) to deter future conduct. *See id.* at 4. Rubin attached to the motion three witness affidavits, which the trial court summarized as follows:

> A. Bates Affidavit
>
> Bates recalls seeing Stewart walking down the center aisle towards the exit[, and] Stewart "turning down the back aisle and walking towards [Bates]." While no words were exchanged between the two, Bates recalls that Stewart "put his face within a few inches of [Bates's] face, staring [Bates] down." At that point Stewart was "on the verge of saying something." Bates recalls Stewart was "shrugged" away by [A]ttorney Del Bove twice while Stewart continued "staring [Bates] down." Bates concludes the encounter ended when Stewart's attorneys "were finally able to pull [Stewart] away."
>
> *        *        *

---

[3] *See* 2554 EDA 2021 (appeal of Stewart and HLS); 2555 EDA 2021 (appeal of Alejandro).

[B]. Phillips Affidavit

The encounter was witnessed by others in the courtroom, one of whom was Rachel Phillips. The Phillips affidavit recounts her observations as well as the impact upon her. Phillips is a Penn State University student and was a summer legal assistant in [Rubin's] counsel's office. Phillips recalled feeling "worried and intimidated" after witnessing Stewart "accost" Bates. Her factual account substantially mirrors that of Bates except that she reports Stewart mumbling and Bates leaning back when Stewart stood very close and looked down on him."

[C]. S. Rubin Affidavit

The final affidavit submitted was that of Steven H. Rubin [Brother] an attorney and brother of the plaintiff, [ ] Rubin. [Brother's] affidavit substantiates other witnesses in characterizing the distance between Bates and Stewart at the relevant time as "very close (less than a foot away)" and that [A]ttorney Del Bove pulled his client Stewart away from any closer contact with Bates. [Brother's] affidavit otherwise provided no relevant details of the encounter.

Trial Ct. Op., 4/4/22, at 2-3 (footnotes omitted).

Stewart filed a response to the motion for sanctions on August 18, 2021. He denied that he intended to intimidate a witness at trial, and asserted, *inter alia*, that he could not be sanctioned for violating the Rules of Professional Conduct since he was not representing a client during the trial. **See** Stewart's Response in Opposition to Rubin's Motion for Sanctions, 8/18/21, at 1, 4 (unpaginated). Stewart attached to his response his own affidavit, which the court notes was not "diametrically at odds" with the description of the encounter provided by Bates:

B. Stewart Affidavit

Stewart admits that "I considered speaking to Mr. Bates but decided against same." The affidavit provides no additional details pertinent to the interaction between Stewart and Bates. Stewart

- 6 -

did not aver that he did not walk in the direction of Bates. Stewart did not aver that he was not within inches of Bates. Stewart did not aver that his attorney, Del Bove, did not escort him out of the room. In short, the remainder of the affidavit fails to inform of Stewart's actions or his motivation.

Trial Ct. Op. at 2-3 (footnotes omitted). As the trial court aptly observed, Stewart did not include an affidavit from the "one other person [who] was present during the encounter," his own counsel, Attorney Del Bove. *Id.* at 2 (footnote omitted).

The trial court conducted two hearings on the motion for sanctions. The first hearing was held on September 14, 2021. Rubin again requested counsel fees pursuant to Section 2503, as well as sanctions for Stewart's purported violations of the Rules of Professional Conduct. N.T., 9/14/21, at 4-9. He also asserted, however, there were "arguably reasons to also hold [ ] Stewart in civil contempt." *Id.* at 4. Stewart's counsel, Attorney Del Bove, emphasized that the criminal statute of witness intimidation "has no relevancy here" and that Stewart was not "acting as a lawyer in this case" so he should not be sanctioned for violating the professional conduct rules. *See id.* at 11-12. Attorney Del Bove also requested a hearing so that the parties could present witnesses. *See id.* at 20-21. "In an abundance of caution and to provide for a complete record," the trial court scheduled a second hearing for November 5, 2021, and permitted the parties to file supplemental briefs. *See* Trial Ct. Op. at 4.

Both parties filed supplemental briefs. At the November 5, 2021, hearing no witnesses were presented by either party. On January 14, 2022,

the trial court entered an order granting Rubin's motion for sanctions "having determined [Stewart] misbehaved in manner that obstructs the administration of justice and/or otherwise evidenced a neglect of the lawful process of the court." Order, 1/14/21, at 1. The court further directed that Stewart "and/or" HLS pay monetary sanctions of $5,000 to Rubin's counsel (Beasley Law) and $5,000 to the Office of Judicial Records. *Id.*

On January 24, 2022, Stewart and HLS filed a motion for reconsideration, asserting, *inter alia*, that the motion for sanctions was made against Stewart "only and not" HLS. *See* Stewart and HLS's Motion for Reconsideration, 1/24/22, at 3. On February 3, 2022, before the trial court ruled on the motion for reconsideration, Stewart filed a timely notice of appeal. That appeal is docketed at 411 EDA 2022.

Thereafter, on March 15, 2022, the trial court entered the following order:

> [U]pon consideration of [Stewart and HLS's] Motion for Reconsideration it is hereby ORDERED that said motion is GRANTED. The court's January 14, 2022 [order] is VACATED only at to [HLS]. More specifically, all references to [HLS] in the said Order are hereby STRICKEN.
>
> The January 14, 2022 Order remains unchanged in all other respects.

Order, 3/15/22.

On March 24, 2022, Stewart filed what he characterized as a motion for post-trial relief, again challenging the court's January 14, 2022, sanction order. The certified record does not include an order disposing of this motion.

On April 13, 2022, Stewart filed an appeal from the March 15th order. That appeal is docketed at 1018 EDA 2022.

We note that because these appeals were consolidated, the parties have each filed one brief, listing both appeal docket numbers.

## II.    Appeal at Docket 1018 EDA 2022

Preliminarily, we are constrained to quash Stewart's appeal at Docket No. 1018 EDA 2022. That appeal was taken from the March 15, 2022, order of the trial court granting reconsideration of its January 14th order, and striking all references to HLS from the prior order. *See* Order, 3/15/22.

Pursuant to the Judicial Code, "a court . . .  may modify or rescind any order **within 30 days after its entry**, notwithstanding the prior termination of any term of court, if no appeal from such order has been taken or allowed." 42 Pa.C.S. § 5505 (emphasis added). In the present case, however, the trial court modified and, in part, rescinded its January 14, 2022, order **more than 30 days** after it was entered (*i.e.* on March 15, 2022), and **after an appeal** had been taken from that order. As noted above, Stewart and HLS filed a notice of appeal from the January 14, 2022, order on February 3, 2022.

Pennsylvania Rule of Appellate Procedure 1701 mandates that after an appeal is taken, "the trial court . . . may no longer proceed further in the matter" except to take action "otherwise ancillary to the appeal" — this includes preserving the *status quo* or correcting "formal errors in papers" — or

to "[e]nforce any order entered in the matter." Pa.R.A.P. 1701(a), (b)(1)-(2).

Moreover, pursuant to Rule 1701(b)(3):

> Even if an appeal is timely filed, a court may grant a party's motion to reconsider a final order, but only if (1) a motion to reconsider is filed within the appeal period; and (2) the court **expressly grants** reconsideration within the appeal period. If a court fails to act on a timely reconsideration motion within the appeal period, it loses jurisdiction to do so.

***Manufacturers & Traders Tr. Co. v. Greenville Gastroenterology, SC***, 108 A.3d 913, 918 (Pa. Super. 2015), *citing* Pa.R.A.P. 1701(b)(3).

Here, after the court entered its January 14, 2022, sanction order, Stewart and HLS filed a timely motion for reconsideration. The trial court did not, however, expressly grant reconsideration before the 30-day appeal period expired. Thus, the court had no jurisdiction to modify or rescind the January 14th order and we conclude the court's March 15, 2022, order was a legal nullity. Accordingly, we quash the appeal at Docket No. 1018 EDA 2022.

### III. Appeal at Docket No. 411 EDA 2022

Stewart presents the following issues for our review of the trial court's January 14, 2022, order:

1. Did the [t]rial [c]ourt abuse its discretion: (1) in determining that Attorney Stewart should be sanctioned for conduct at trial; and entering its Order of January 14, 2022[?]

2. Did the [t]rial [c]ourt abuse its discretion when it convicted Attorney Stewart of criminal contempt?

3. Did the [t]rial [c]ourt abuse its discretion when it convicted Attorney Stewart of criminal contempt on insufficient evidence of such an offense?

- 10 -

4. Did the [t]rial [c]ourt err by failing to provide Attorney Stewart due process rights before convicting Attorney Stewart of criminal contempt?

Stewart's Brief at 4.[4]

The trial court derived its authority to issue the sanction order at issue from Section 4132 of the Judicial Code. *See* Trial Ct. Op. at 4-5. 42 Pa.C.S. 4132, entitled "Attachment and summary punishment for contempts[,]" provides:

The power of the several courts of this Commonwealth to issue attachments and to impose summary punishments for contempts of court shall be restricted to the following cases:

(1) The official misconduct of the officers of such courts respectively.

(1.1) The willful failure of the officers of such courts to disclose a person's complete criminal history record information when requested.

(2) Disobedience or neglect by officers, parties, jurors or witnesses of or to the lawful process of the court.

(3) The misbehavior of any person in the presence of the court, thereby obstructing the administration of justice.

---

[4] We note that the arguments in Stewart's brief are not confined to the issues presented in his Statement of Questions Involved. Indeed, while his statement of questions focuses on the issue of criminal contempt, Stewart also argues, *inter alia*, that the court abused its discretion by sanctioning him for violating the Rules of Professional Conduct when he was not representing a client at the time of the incident. *See* Stewart's Brief at 22-24. Pennsylvania Rule of Appellate Procedure 2116 mandates that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." *See* Pa.R.A.P. 2116(a). Because we conclude Stewart's first issue — that the trial court abused its discretion in determining Stewart should be sanctioned for conduct at trial — fairly encompasses the arguments presented in his brief, we decline to find waiver.

42 Pa.C.S. § 4132(1)-(3).

Here the trial court first found Stewart's behavior constituted "[d]isobediance of or to the [l]awful process of the [c]ourt." Trial Ct. Op. at 5. The court explained Stewart's conduct was "unprofessional and, at minimum, provocative as well as offensive." *Id.* It characterized Stewart's behavior as "school yard bullying not to be countenance[d] in a court of law." *Id.* (quotation marks omitted).

Next, the trial court described Stewart's conduct as "sanctionable nonverbal communication," noting Stewart "breach[ed Bates's] personal space" absent any "legally cognizable explanation[.]" Trial Ct. Op. at 5-6 (some capitalization omitted). The court found the conduct particularly disturbing since it occurred "during a global pandemic . . . when the courthouse was operating under COVID-19 protocols requiring six-foot social distancing." *Id.* at 6. Moreover, the trial court determined "Stewart acted with wrongful intent . . . to further his interest as a defendant[,]" and that the fact "the witness was able to return to the stand and continue to give testimony [did] not alleviate the harm." *Id.* at 6-7. Rather, it described Stewart's conduct as "prejudicial to the fair administration of justice." *Id.* at 7.

Lastly, the trial court concluded it could sanction Stewart for violating the Pennsylvania Rules of Professional Conduct, by engaging in "conduct that is prejudicial to the administration of justice[.] **See** Trial Ct. Op. at 7, *citing* Pa.R.P.C. 8.4(d). The court noted that the preamble to the Rules state "[a]

lawyer's conduct should conform to the requirements of the law . . . in the lawyer's business and **personal** affairs." Trial Ct. Op. at 7, *citing* Pa.R.P.C., Preamble & Scope (5).

Stewart argues, however, that the trial court erred and abused its discretion when it sanctioned him for "misbehavior." ***See*** Stewart's Brief at 11. He maintains that Section 4132 permits a court to impose a summary punishment for contempt when the offender fails to comply with a court order (subsection 2) or misbehaves in the presence of the court with the intent to obstruct the proceeding and the conduct "actually obstructed the administration of justice" (subsection 3). ***See*** Stewart's Brief at 13-15. He insists there was no evidence that he intended to interrupt the proceedings, and, "regardless of which version of events the [c]ourt found more credible, it is not in dispute that . . . Stewart's alleged action did not interrupt the trial." ***Id.*** at 16, 19. Moreover, with regard to the court's determination that he violated the Rules of Professional Conduct, Stewart maintains trial courts are not permitted to punish attorneys for misconduct, and in any event, Stewart was not "acting in his capacity as an attorney" at the time of the incident. ***See id.*** at 23-24.

Upon our review of the record, the parties' briefs, and the relevant statutory and case law, we are constrained to agree that the trial court abused its discretion in sanctioning Stewart for his conduct during the court recess. First, it is not entirely clear from the court's order and opinion whether it imposed sanctions for civil contempt, criminal contempt, or a violation of the

Rules of Professional Conduct. Under either scenario, however, the sanctions order cannot stand.

"To be punished for contempt, a party **must** have violated a court order." ***Marian Shop, Inc. v. Baird***, 670 A.2d 671, 673 (Pa. Super. 1996).

> To sustain a finding of civil contempt, the complainant must prove certain distinct elements: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent.

***Lachat v. Hinchcliffe***, 769 A.2d 481, 489 (Pa. Super. 2001) (citation omitted). Moreover:

> The distinction between criminal and civil contempt is rather a distinction between two permissible judicial responses to contumacious behavior. These judicial responses are classified according to the dominant purpose of the court. If the dominant purpose is to vindicate the dignity and authority of the court and to protect the interest of the general public, it is a proceeding for criminal contempt. But where the act of contempt complained of is the refusal to do or refrain from doing some act ordered or prohibited primarily for the benefit of a private party, proceedings to enforce compliance with the decree of the court are civil in nature. The purpose of a civil contempt proceeding is remedial. Judicial sanctions are employed to coerce the defendant into compliance with the court's order, and in some instances, to compensate the complainant for losses sustained.

***Id.*** at 488 (citations omitted).

Although the trial court did not explicitly state it found Stewart to be in **criminal** contempt, we conclude that it did so. Indeed, the "dominant purpose" of the trial court's order was not to enforce compliance with a court order or directive, but rather, "to vindicate the dignity and authority of the court[.]" ***See Lachat***, 769 A.2d at 488.

- 14 -

In *In re C.W.*, 960 A.2d 458 (Pa. Super. 2008), this Court delineated the elements required to support a conviction of criminal contempt under 42 Pa.C.S. § 4132(2) and (3).

[A] finding of contempt pursuant to [Subsection 4132(2)] must be supported by the following four elements:

(1) The [court's] order or decree must be definite, clear, specific and leave no doubt or uncertainty in the mind of the person to whom it was addressed of the conduct prohibited;

(2) The contemnor must have had notice of the specific order or decree;

(3) The act constituting the violation must have been volitional; and

(4) The contemnor must have acted with wrongful intent.

\*   \*   \*

In order to sustain a conviction for contempt under 42 Pa.C.S. § 4132(3), **there must be proof beyond a reasonable doubt** of:

(1) misconduct, (2) in the presence of the court, (3) committed with the intent to obstruct the proceedings, (4) **which obstructs the administration of justice**. [C]ontempt requires actual, imminent prejudice to a fair proceeding or prejudice to the preservation of the court's orderly procedure and authority. **Remarks that are injudicious, or even disrespectful, will not, without more, justify a summary conviction for contempt of court.**

*In re C.W.*, 960 A.2d at 467, 469 (citations omitted & emphases added).

Here, the court's contempt finding fails. Stewart could not be found in contempt pursuant to Section 4132(2) because he did not violate a "specific order or decree." **See C.W.**, 960 A.2d at 467. Moreover, we agree with

Stewart that there is no evidence his behavior — while clearly childish, inappropriate, and unprofessional — obstructed the administration of justice or prejudiced the proceedings as is required for a finding of criminal contempt under Section 4132(3). *See id.* at 469; Stewart's Brief at 18-19. Indeed, the conduct occurred during a break when neither the jury, nor the trial court, was in the courtroom. *See* N.T., 7/15/21, at 72. When the trial resumed, the court heard brief arguments from both parties regarding what had occurred during the break and determined it would consider the matter upon further fact finding after trial was completed. *See id.* at 72-75, 82-83. The witness at issue — Bates — was able to resume his testimony without incident. *See id.* at 76-80.

We recognize that the trial court found Stewart's conduct was "prejudicial to the fair administration of justice" because it "negatively impacted the public's view of the court as safe and accessible to all." *See* Trial Ct. Op. at 7. The court cited Rachel Phillips' affidavit to confirm that Stewart's behavior "concerned" the courtroom spectators. *See id.* We cannot conclude, however, that the court's determination in this regard was supported by proof beyond a reasonable doubt. The trial court did not make such a determination in its opinion, and, by all accounts, the incident lasted very briefly, and Bates was unmoved by the encounter. Accordingly, we conclude the trial court abused its discretion to the extent it held Stewart in criminal contempt.

Lastly, we also agree with Stewart that the trial court had no authority to sanction him for a purported violation of the Pennsylvania Rules of Professional Conduct when he was not serving in his capacity as an attorney at the proceedings. While we recognize the preamble to the Rules state an attorney should "conform to the requirements of the law, both in . . . [his] business and personal affairs[,]" we do not interpret that mandate to permit a trial court to sanction an attorney for purported violations of the Rules of Professional Conduct he commits while not acting as an attorney or in furtherance of his legal profession. *See* Pa.R.P.C., Preamble & Scope (5). Rather, the directive is simple — a lawyer should not break the law. Neither the trial court, nor Rubin, provides any support for the assertion that an attorney may be subject to sanctions for violating the Rules of Professional Conduct when not acting in his capacity as an attorney.

Thus, we conclude the trial court abused its discretion in sanctioning Stewart (and HLS) for his conduct as a defendant during a court recess at the July 15, 2021, trial proceeding, and we are confined to vacate the trial court's January 14, 2021, order. However, we emphasize that our ruling does not, in any way, condone Stewart's behavior — his actions were boorish, unprofessional, and unacceptable.

## IV.  CONCLUSION

At Docket 411 EDA 2022, we vacate the January 14, 2021, order granting Rubin's motion for sanctions, and directing Stewart and HLS to pay $10,000 in sanctions.

At Docket 1018 EDA 2022, we quash the appeal taken from the trial court's March 15, 2022, order, which was entered when the court had no jurisdiction.

Order vacated at Docket No. 411 EDA 2022.

Appeal quashed at Docket No. 1018 EDA 2022.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/15/2023