J-A03003-22
J-A03004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CHAD BATTERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SILVIA SANTO | : | No. 1532 EDA 2021 |

Appeal from the Order Entered June 16, 2021
In the Court of Common Pleas of Montgomery County
Civil Division at No:  2019-06877

| CHAD BATTERMAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| SILVIA SANTO | : | No. 1703 EDA 2021 |

Appeal from the Order Entered July 16, 2021
In the Court of Common Pleas of Montgomery County
Civil Division at No:  2019-06877

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY STABILE, J.:                        **FILED JUNE 10, 2022**

Chad Batterman ("Father") appeals *pro se* from the child custody orders entered on June 16, 2021, and July 16, 2021.  In the June 16, 2021 order, the trial court ruled on a dispute involving a dance recital Father scheduled for one of the parties' children and a vacation Silvia Santo ("Mother") scheduled for the same time.  The court further denied Father's request to find Mother in contempt.  In the July 16, 2021 order, the court made a final custody award,

maintaining sole legal and primary physical custody of the parties' children with Mother and adjusting Father's partial physical custody schedule. The court again denied Father's request to find Mother in contempt. In reviewing these matters, we also consider Father's *pro se* "Motion for Reconsideration" of our order consolidating his appeals. We affirm the June 16, 2021, and July 16, 2021 orders and deny Father's motion.

**FACTUAL AND PROCEDURAL HISTORY**

This case has a lengthy and tortuous history. For the sake of brevity, we note only that Father and Mother married in November 2014 and separated in November 2017. The parties had two children together, C.B., a female born in October 2015, and D.B., a male born in October 2017 (collectively, "the Children"). Mother commenced divorce proceedings, but our review of the record does not disclose whether those proceedings remain ongoing.

The parties' custody litigation began in Philadelphia County. Pursuant to a custody order entered by the Philadelphia County Court of Common Pleas, dated March 6, 2019, Mother received sole legal and primary physical custody of the Children. Father received partial physical custody on the first, third, and (if available) fifth weekend of each month, from Thursday at 4:00 p.m. until Monday at 9:00 a.m. During weeks that Father would not have weekend custody, he received partial physical custody on Thursday from 4:00 p.m. until 8:00 p.m. The Philadelphia trial court entered an amended custody order, dated May 3, 2019, which made no substantive changes to this schedule.

Meanwhile, venue over the dispute transferred to Montgomery County, because Mother lived there, and neither party continued to live in Philadelphia County. Extensive litigation ensued over the next two years, due in large part to Father's myriad court filings and discovery disputes he initiated with two police departments and a pediatrician's office.

Relevant for purposes of this appeal, the trial court entered an order on October 15, 2020, pursuant to which the parties agreed to resolve all custody issues between them by withdrawing their outstanding pleadings and leaving the existing May 3, 2019 order in place. This resolution of the parties' dispute lasted only fleetingly, as Father filed *pro se* petitions for contempt on October 23, 2020, October 26, 2020, and October 30, 2020, followed by two *pro se* amended petitions for contempt on December 9, 2020. Father filed a *pro se* petition to modify custody on November 25, 2020, in which he requested sole legal and primary physical custody of the Children. He then filed yet another *pro se* petition for contempt on February 26, 2021.

The trial court conducted a consolidated hearing on Father's pleadings over five days, on January 25, 2021, January 26, 2021, February 19, 2021, March 15, 2021, and March 16, 2021. Following the hearing, on March 17, 2021, the court entered an order indicating that it was taking the matter under advisement.

While the trial court's resolution remained pending, yet another dispute arose between the parties. On May 12, 2021, Father filed a *pro se* "Emergency

Motion Regarding Dance Recital," averring that a conflict had arisen between a dance recital he arranged for C.B. and a vacation Mother planned for June 2021. Father later filed a *pro se* amended version of this pleading on June 2, 2021, and a *pro se* "Emergency Motion for Special Relief for the Denial of Mother's Vacation and Contempt" on June 4, 2021. He filed a *pro se* amended pleading requesting special relief and contempt on June 15, 2021. Generally, Father requested that the court prohibit or limit Mother's planned vacation or, in the alternative, find her in contempt of the May 3, 2019 order for failing to provide him with start and end dates of her vacation thirty days in advance.

The trial court conducted a hearing on June 16, 2021, and entered an order that same day, which denied as moot Father's request to ensure C.B. participated in her dance recital by precluding Mother's vacation. The court granted Father's request to limit Mother's vacation in part, in that it directed Mother to return Child to Father by 6:00 p.m. on June 19, 2021. Further, the court granted Father three days of makeup custody time during the summer of 2021. The court denied Father's request to find Mother in contempt.

On July 12, 2021, Father filed a *pro se* motion for reconsideration of the June 16, 2021 order. The trial court denied reconsideration on the same day.[1] Father timely filed a *pro se* notice of appeal on July 13, 2020, along with a

---

[1] Curiously, the motion for reconsideration continued to appear as a pending pleading on scheduling orders for months afterward. **See**, **e.g.**, Amended Order – Scheduling, 9/16/21.

- 4 -

concise statement of errors complained of on appeal.[2] This Court assigned Father's appeal docket number 1532 EDA 2021.

While the parties litigated their dispute regarding the dance recital and Mother's vacation, the trial court had not yet entered an order resolving the five-day custody hearing from January to March 2021. In addition, the parties continued to file new pleadings. Mother filed an emergency custody petition on June 25, 2021, averring Father was refusing to return the Children to her care pursuant to the May 3, 2019 order. She filed a praecipe to withdraw the emergency petition on June 29, 2021. Father filed a *pro se* petition for special relief on July 13, 2021, requesting sole legal custody and that the Children be enrolled in a camp program his family operates.[3]

At last, the trial court entered its final custody order on July 16, 2021. The order maintained sole legal and primary physical custody of the Children with Mother and adjusted Father's partial physical custody award. The order

_____

[2] The June 16, 2021 order is appealable, as it denied Father's request for a finding of contempt with respect to the May 3, 2019 final order. ***See Schultz v. Schultz***, 70 A.3d 826, 828-29 (Pa. Super. 2013) ("[A]n order refusing to find an individual in contempt is appealable only where the respondent failed to comply with a prior final order."). To the extent portions of the June 16, 2021 order not dealing with contempt were interlocutory and unappealable at the time Father filed his notice of appeal, the subsequent entry and appeal of the final custody order, described below, rendered those portions reviewable. ***In re Bridgeport Fire Litigation***, 51 A.3d 224, 229 (Pa. Super. 2012) (citing ***Quinn v. Bupp***, 955 A.2d 1014, 1020 (Pa. Super. 2008), *reargument denied* (Sept. 19, 2008), *appeal denied,* 989 A.2d 918 (Pa. 2009)).

[3] The parties also filed a slew of contempt petitions against each other between June 25, 2021, and August 14, 2021. These petitions remained pending at the time this Court received the certified record.

awarded Father partial physical custody every Tuesday from 8:00 a.m. until Wednesday at 7:00 p.m. and every other weekend from Friday at 5:00 p.m. until Monday at 8:00 a.m. Moreover, the order explained, although "certain actions of each of the parties ha[ve] risen to the level of contempt," the court was "choos[ing] to look forward and not back" and denied the outstanding contempt petitions, with the aspiration that the parties would resolve their differences more amicably going forward. Order, 7/16/21, at 8-9. The court issued separate findings of fact, which further explained its decision.

In essence, the trial court's findings focused on the parties' inability to coparent and hostility toward each other. While the court found Mother was not without fault for this situation, it concluded Father bore the greater share of the blame, due primarily to his excessive litigiousness. Findings of Fact, 7/16/21, at 2-5, 9. The court expressed hope that the parties would improve their coparenting in the future but reasoned that their present combativeness precluded a more equal custody award. *Id.* at 4, 11-12.

Mother filed a motion for reconsideration of the July 16, 2021 order on August 13, 2021. Father then filed timely *pro se* notice of appeal on August 16, 2021,[4] along with a concise statement of errors complained of on appeal. He filed a *pro se* amended concise statement on August 17, 2021, which made

_____

[4] Thirty days after the trial court entered its order was Sunday, August 15, 2021. Therefore, Father timely filed his notice of appeal on Monday, August 16, 2021. *See* Pa.R.A.P. 903, Note (observing our Rules of Appellate Procedure incorporate 1 Pa.C.S. § 1908 "relating to . . . the omission of the last day of a time period which falls on Saturday, Sunday or legal holiday.").

only superficial wording changes to the claims he was presenting. It does not appear that the trial court ruled specifically on the motion for reconsideration. This Court assigned Father's second appeal docket number 1703 EDA 2021.[5]

**FATHER'S APPEAL AT 1532 EDA 2021**

We begin by considering Father's appeal at 1532 EDA 2021. He presents the following claims for our review:

> Did the trial court err[] as a matter of law by the following:
>
> 1. by failing to find [Mother] in contempt of the May 3, 2019 custody order,
>
> 2. by modifying the May 3, 2019 custody order without prior notice,
>
> 3. by modifying the May 3, 2019 custody order at a contempt hearing when there was no pending petition to modify custody heard at the hearing, and
>
> 4. by allowing [Mother] to submit their exhibits late, not in compliance with the June 7, 2021 scheduling order[?]

Father's Brief (1532 EDA 2021) at 6 (emphasis and unnecessary capitalization omitted) (unnumbered pages).[6]

---

[5] We entered an order consolidating Father's two appeals on January 11, 2022. Father filed a *pro se* "Motion for Reconsideration" of our consolidation order on January 25, 2022. Because consolidation eases our review and disposition of Father's appeals and causes him no prejudice, we deny his motion.

[6] We note with disapproval that Father does not divide the argument section of brief into subsections corresponding to his statement of questions involved. *See* Pa.R.A.P. 2119(a) ("The argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part--in distinctive type or in type distinctively displayed--the particular point treated therein[.]").

In Father's first claim, he challenges the trial court's finding that Mother was not in contempt of the May 3, 2019 order by going on vacation with the Children rather than facilitating C.B.'s participation in the dance recital that he arranged. We review the court's finding pursuant to an abuse of discretion standard of review. **Garr v. Peters**, 773 A.2d 183, 189 (Pa. Super. 2001). To support a finding of civil contempt,[7] a court must determine "(1) that the contemnor had notice of the specific order or decree which she is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) that the contemnor acted with wrongful intent." **Harcar v. Harcar**, 982 A.2d 1230, 1235 (Pa. Super. 2009).

Father argues Mother was in contempt of the May 3, 2019 order because she did not provide him with notice of her vacation thirty days in advance with

---

[7] A trial court may order civil or criminal contempt. **In the Interest of E.O.**, 195 A.3d 583, 586 (Pa. Super. 2018) (quoting **In the Interest of C.W.**, 960 A.2d 458, 466 (Pa. Super. 2008)). If the court's dominant purpose in finding contempt is to coerce compliance by the contemnor, the adjudication is civil in nature. **Id.** If the court's dominant purpose is to punish disobedience by the contemnor, the adjudication is criminal in nature. **Id.**

We apply the standards applicable to a finding of civil contempt here, as this case involves a private party requesting contempt in an ongoing action to obtain relief for his own benefit. **See Warmkessel v. Heffner**, 17 A.3d 408, 414 (Pa. Super. 2011), *appeal denied*, 34 A.3d 833 (Pa. 2011) (quoting **Stahl v. Redcay**, 897 A.2d 478, 486 (Pa. Super. 2006), *reargument denied* (May 18, 2006), *appeal denied*, 918 A.2d 747 (Pa. 2007)) (discussing factors "generally said to point to a civil contempt"). In addition, Father sought civil contempt in his petitions or included language in his petitions asking the trial court to enter an order "compelling [Mother] to comply[.]" **See**, **e.g.**, Petition for Contempt and Enforcement, 10/23/20, at 2-3; Emergency Petition for Civil Contempt, 10/26/20, at 1.

the specific start and end dates. Father's Brief (1532 EDA 2021) at 7-9. He further maintains Mother was in contempt because her vacation caused an extension of her custody time and reduction of his custody time. *Id.* at 8-11. Father's claim relies on the vacation provision of the May 3, 2019 order, which provides, in relevant part, that the parents would each "be entitled to two [] non-consecutive weeks of vacation with the Children upon thirty [] days written notice to the other parent. A week is defined as seven [] days, which shall not be used to extend their regular custodial time." Order, 5/3/19, at 4 (unnecessary capitalization omitted).

The trial court explained in its opinion that it declined to find Mother in contempt because it did not believe that she acted with wrongful intent. Trial Court Opinion (1532 EDA 2021), 9/13/21, at 7-9. The court cited Mother's testimony regarding her numerous attempts to compromise with Father after the parties discovered the conflict between the vacation and the dance recital. *Id.* In addition, the court reasoned that the vacation provision of the May 3, 2019 order was ambiguous. *Id.* While the order provided that Mother could exercise two nonconsecutive weeks of vacation with Child each year, it further provided Mother's vacation could not "extend [her] regular custodial time." *Id.* at 6 (quoting Order, 5/3/19, at 4) (capitalization omitted). This made it impossible for Mother to exercise a full week of vacation with Child without violating the order, the court observed, since Father was entitled to regular custody of Child under the order at least once per week. *Id.* at 6-7.

We discern no abuse of discretion in the trial court's analysis. The record indicates that Mother first notified Father she would be taking a vacation on the same weekend as the June 2021 dance recital on April 23, 2021, more than thirty days in advance. N.T., 6/16/21, at 57, 85; Supplemental Record, 12/6/21.[8] Further, Mother testified she attempted repeatedly to compromise with Father to resolve the parties' disagreement. N.T., 6/16/21, at 86-90. These attempts at compromise included a proposal Mother sent Father on May 4, 2021, which included specific start and end dates for her vacation. *See* Supplemental Record, 12/6/21 ("I would start our vacation . . . Sunday, June 13th to Sunday, June 20th, [C.B.] would be here to do the recital[, and] the kids still get a great vacation, seems like a win win. Are you ok with this?"). This again was more than thirty days in advance. While Mother did ultimately act contrary to the May 3, 2019 order by taking a vacation that extended her regular custodial time, this evidence supports the court's finding that she did not act with wrongful intent.

It was also reasonable for the trial court to weigh the ambiguity of the May 3, 2019 order against a finding of contempt. As the court observed, the order provided that the parties would have seven-day periods of vacation but also that vacation could not extend a party's regular custody time. This caveat made it impossible for Mother to have a seven-day vacation, since Father

_____

[8] This Court received a supplemental record on December 6, 2021, containing exhibits from the June 16, 2021 hearing, but the exhibits are not individually labeled.

- 10 -

would always have custody of the Children at least once per week.  ***See Sutch v. Roxborough Memorial Hosp.***, 142 A.3d 38, 67 (Pa. Super. 2016), *appeal denied*, 163 A.3d 399 (Pa. 2016) (quoting **Stahl**, 897 A.2d at 489) ("Because the order forming the basis for civil contempt must be strictly construed, any ambiguities or omissions in the order must be construed in favor of the defendant.  In such cases, a contradictory order . . . will not serve as the basis for a finding of contempt.").

Next, Father argues in his interrelated second and third claims that the trial court impermissibly modified the May 3, 2019 custody order following the contempt hearing without prior notice and when there was no pending custody modification petition.[9]  He contends the court had no power to deviate from the terms of the May 3, 2019 order and simply should have enforced it as it was written, which would have meant limiting Mother to less than a full seven days of vacation and ordering her to return the Children to him for his regular custody time beginning on Thursday, June 17, 2017.  Father's Brief (1532 EDA 2021) at 11-13.  Father maintains that the court instead modified the order by directing Mother to return the Children on the evening of Saturday, June

---

[9] We note that different trial judges entered the two orders on appeal in this matter.  The Honorable Richard S. Haaz entered the order on appeal at 1532 EDA 2021, relating to the dance recital and Mother's vacation, while the Honorable Melissa S. Sterling entered the order on appeal at 1703 EDA 2021, resulting from the five-day modification hearing.  Thus, while there actually was a modification proceeding pending at the time Judge Haaz entered the June 16, 2021 order, Judge Haaz had not been involved.

19, 2019, resulting in Father exercising only part of his regular custody time.
*Id.*

Our case law is clear a trial court may not modify custody at a contempt hearing without explicit notice to the parties that custody rights are at stake. ***J.M. v. K.W.***, 164 A.3d 1260, 1267-70 (Pa. Super. 2017) (*en banc*). In this case, by contrast, the record demonstrates contempt was not the only matter at issue when the court entered its June 16, 2021 order. The court addressed two of Father's outstanding pleadings when entering its order, which included his "Amended Emergency Motion for Special Relief Regarding Dance Recital" and "Amended Emergency Motion for Special Relief for the Denial of Mother's Vacation and Contempt." In the pleadings, Father asked that the court ensure C.B.'s participation in her dance recital and prevent Mother from continuing her vacation into his custody time. At the time of the hearing, Father did not dispute that his request to ensure C.B.'s participation in her dance recital was moot, since the recital had already occurred. N.T., 6/16/21, at 6. He asked, nonetheless, that the court order Mother to return from her vacation early, so that it would not continue into his custody time. *Id.* at 7. Therefore, because Father himself placed custody at issue by requesting that the court enter an order resolving the parties' vacation dispute, no relief is due.[10]

---

[10] It was permissible for the trial court to enter the custody portion of its order pursuant to our Rules of Civil Procedure, which provide, "[a]t any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include, but is not
*(Footnote Continued Next Page)*

Father's fourth and final claim at 1532 EDA 2021 is that the trial court erred by permitting Mother to submit exhibits late and not in compliance with its June 7, 2021 scheduling order. Father argues the court's scheduling order required the parties to submit exhibits three business days prior to the hearing scheduled for Wednesday, June 16, 2021, at 9:30 a.m. Father's Brief (1532 EDA 2021) at 14. Father insists Mother violated the order by submitting her exhibits on Sunday, June 13, 2021, at 5:35 p.m. *Id.*

We agree with the trial court that Father waived this claim by failing to make a timely and specific objection at the hearing, as the following excerpt from the record reveals:

> THE COURT: All right, [Father]. You have the floor.
>
> [Father:] Just some housekeeping, just a normal record. I am not sure if you are aware, pursuant to your June 17 [*sic*] scheduling order, we had to submit exhibits by three business days, which is Friday. [Mother's counsel] sent it on Friday 5:30 p.m., which would only by two business days before. I would like to note that on the record. I object to them being --
>
> THE COURT: Okay. If he moves them in, you make an objection and I will make a ruling at that time.
>
> [Father:] Okay. . . .
>
> \*\*\*

---

limited to, the award of temporary legal or physical custody[.]" Pa.R.C.P. 1915.13; *see also J.M.*, 164 A.3d at 1269 (explaining, "that absent an award of special relief under Rule 1915.13 . . . it is an abuse of discretion for the trial court to transfer custody from one party to the other as a contempt sanction").

- 13 -

THE COURT: . . . . [Mother's counsel], do you have anymore evidence to present?

[Mother's counsel:] No. Just move the admission of Exhibit M-1 through M-4?

THE COURT: Any objection to M-1 through M-4?

[Father:] No. No objection.

THE COURT: They are admitted into the record.

N.T., 6/16/21, at 9, 125.

As we have explained, failure to make a timely and specific objection in the trial court will result in waiver on appeal. *In the Interest of L.V.*, 209 A.3d 399, 418 (Pa. Super. 2019) (quoting *In re S.C.B.*, 990 A.2d 762, 767 (Pa. Super. 2010)). "[O]ne must object to errors . . . at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." *Id.* Because Father stated expressly on the record that he did not object to the admission of Mother's exhibits, he is not entitled to relief.

Based on the foregoing analysis, we conclude Father's appeal at 1532 EDA 2021 is meritless, and we affirm the June 16, 2021 order.

**FATHER'S APPEAL AT 1703 EDA 2021**

We next direct our attention to Father's appeal at 1703 EDA 2021. His brief presents the following claims:

The [trial] court erred in its Order of July 16, 2021, for the following reasons:

- 14 -

1. The [trial court] erred as a matter of law by awarding Mother primary physical custody of the parties' children.

2. The [trial court] erred as a matter of law by awarding Mother sole legal custody of the parties' children.

3. The [trial court] erred as a matter of law by failing to rule on contempt petitions before the court, failing to find [Mother] in contempt and failing to award make-up time and filing fees to [Father].

4. The [trial court] erred as a matter of law by failing to enter an order regarding the [C]hildren's school and summer camp consistent with the [C]hildren's best interest and best options available to them.

5. The [trial court] erred as a matter of law by failing to equitably distribute the financial obligations and holiday time between the parties'. [*sic*]

6. The [trial court] erred as a matter of law by denying [Father's] motion to allow more time for contempt's [*sic*] to be fully heard and stay all pending matters.

7. The [trial court] erred as a matter of law by substantially limiting the custody hearing, evidence, subpoenas and witnesses, including experts, presented by [Father].

8. The [trial court] erred as a matter of law by refusing to recuse herself from the parties' case despite [Father's] petition for recusal.

9. The [trial court] erred as a matter of law by denying Father's motion in limine to exclude reference or evidence of [Father's] driver's license.

10. The [trial court] erred as a matter of law by denying Father's motion in limine to exclude reference or evidence of support.

Father's Brief (1703 EDA 2021) at 11-12 (unnecessary capitalization omitted)

(unnumbered pages).

Preliminarily, we address Father's noncompliance with our law regarding appellate briefs. Pa.R.A.P. 2135(a)(1) provides that a principal brief generally should not exceed fourteen thousand words, and that a typed principal brief over thirty pages in length must contain a certificate of compliance. Father's principal brief at 1703 EDA 2021, excluding supplementary matter, is ninety-seven pages long and does not include a certificate of compliance. According to a word processor, the brief includes nearly forty thousand words, excluding the same supplementary matter.[11] Father again fails to comply with Pa.R.A.P. 2119(a), in that he organizes the argument section of his brief in a manner inconsistent with his statement of questions involved. *Cf.* Pa.R.A.P. 2119(a) Further, Father fails to develop several claims with citation to legal authority. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465 (Pa. Super. 2017) (explaining that this Court will not review a claim unless it is developed in the argument section of an appellant's brief and supported by citation to relevant legal authority).

While Father is proceeding *pro se*, we must emphasize this status does not relieve him of the obligation to comply with our appellate rules. *Jiricko v. Geico Ins. Co.*, 947 A.2d 206, 213 n.11 (Pa. Super. 2008), *appeal denied*,

_____

[11] As a further example of Father's extreme prolixity, we note that Mother filed only a short appellee's brief in this Court indicating she was relying on the trial court's explanation of its decision. In response, Father filed a seventy-page reply brief. *Cf.* Pa.R.A.P. 2135(a)(1) (directing that, generally, "a reply brief shall not exceed 7,000 words . . . . A party shall file a certificate of compliance with the word count limit if the . . . reply brief is longer than 15 pages when prepared on a word processor or typewriter.").

- 16 -

958 A.2d 1048 (Pa. 2008).  Although this Court is willing to construe Father's *pro se* materials liberally, "*pro se* status confers no special benefit upon [an] appellant.  To the contrary, any person choosing to represent himself in a legal proceeding must, to a reasonable extent, assume that his lack of expertise and legal training will be his undoing."  ***In re Ullman***, 995 A.2d 1207, 1211-12 (Pa. Super. 2010), *reargument denied* (July 13, 2010), *appeal denied*, 20 A.3d 489 (Pa. 2011) (citations omitted).

Given Father's noncompliant principal brief, we could dismiss his appeal in its entirety.  ***See*** Pa.R.A.P. 2101 ("[I]f the defects are in the brief . . .  of the appellant and are substantial, the appeal or other matter may be quashed or dismissed."); ***Krauss v. Trane U.S. Inc.***, 104 A.3d 556, 584 (Pa. Super. 2014) ("When deficiencies in a brief hinder our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").  Nevertheless, in the interest of justice, and mindful that this is a Children's Fast Track appeal, we will endeavor to address Father's claims to the extent we are able to discern them.

We review the custody order pursuant to an abuse of discretion standard of review.  ***V.B. v. J.E.B.***, 55 A.3d 1193, 1197 (Pa. Super. 2012) (quoting ***C.R.F. v. S.E.F.***, 45 A.3d 441, 443 (Pa. Super. 2012)).  This Court must defer to the trial court's credibility and weight of the evidence determinations, as the court was able to view and assess the witnesses' testimony firsthand.  ***Id.***

We must accept the court's factual findings if the record supports them, but we need not accept the court's deductions or inferences from its findings. ***Id.***

When entering a custody order, the trial court must base its decision on the child's best interests. ***S.W.D. v. S.A.R.***, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted). The factors that courts must consider when ordering custody are set forth at 23 Pa.C.S.A. § 5328(a), as follows:

**(a) Factors.--**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence

where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In his interrelated first, second, and fourth claims, Father challenges the trial court's credibility determinations and findings of fact, arguing the court should have viewed the evidence differently and awarded him primary physical and sole legal custody of the Children. Father contends, in essence, that he has supported the Children's relationship with Mother, while Mother has tried to limit the Children's relationship with him. Father's Brief (1703 EDA 2021) at 12-23. He also maintains the Children want to spend more time with him.

Father criticizes Mother's parenting in various ways, alleging she mistreats the Children. *Id.* at 16-19. He complains that Mother has made poor decisions with respect to the Children's education, and that the Children should attend the preschool and camp program that his family operates as well as a school district where he resides.[12] *Id.* at 14, 17-21, 83-87. Regarding the award of sole legal custody in particular, Father contends that Mother does not consult him or keep him informed but acts out of animosity and has used the award to exclude Father from the Children's major life decisions. *Id.* at 24-27.

As we summarized above, the trial court considered the Section 5328(a) factors in its findings of fact, focusing on the parties' inability to coparent and hostility toward each other. While the court found Mother bore some blame, it concluded that Father was the party most responsible for the situation, due primarily to his excessive litigiousness. Findings of Fact, 7/16/21, at 2-5, 9. While the court expressed hope the parties coparenting would improve in the future, it reasoned that their present combativeness precluded a more equal award of custody. *Id.* at 4, 11-12. The following is illustrative of the court's findings:

> While ordinarily this might be a case for a 50/50 sharing of custody, and we hope that may someday be the case, Father's behavior is and has been his own worst enemy. He files pleading after pleading, not only against Mother, but against her parents, against the local police departments where custody exchanges take place, and against the doctors who provide medical care for

---

[12] Father indicates in his brief that he "does have residency" in three different school districts. Father's Brief (1703 EDA 2021) at 84.

his [c]hildren. We find particularly sad the fact that Father has badgered (with over 30 emails) the very professionals who provide care for his [c]hildren until, although they would like to continue to provide that care, they cannot do so due to Father's repeated impositions on their staff in his search for the most minute and irrelevant details on the relationship between Mother and the pediatric practice which have nothing to do with his [c]hildren's care.

\*\*\*

. . . [W]e must be guided by what is in the best interest of the Children. Constant court battles over custody, support, discovery, vacations, religion and a plethora of other issues are destructive to these [c]hildren who are regularly exposed to the stress . . . and cannot be unaffected by this. While Mother is not without blame and Father has presented many legitimate issues to the [c]ourt, we find that Father's unending litigious nature and need to win precludes us from finding the parties equal . . . . Fighting over every perceived slight is not a way to show a parent's love for their [c]hildren or to create a healthy environment in which they can grow.

\*\*\*

We do not make our decision today lightly, particularly given the four-year, non-stop battle over these small children and the continued abuse of court time and resources. It appears to us that their spiteful litigation has almost become a full-time job for these parents. We know Father seeks an equal parenting role, but we do not believe that would be the correct decision at this time. These parents must learn to co-parent as peacefully as they possibly can. Once they reach that state of mind – that their children are more important than their battles – we are hopeful that they will be able to jointly make the right decisions for the Children. But for now, one parent must have the ability to make final decisions on critical issues such as health and education and, having heard 5 days of testimony, reviewed both parties' exhibits and considered all the evidence before us, we believe the Order we have issued today is the fairest we can provide.

*Id.* at 4-12.

Our review of the record supports the trial court's decision. Tellingly, the hearing began on January 25, 2021, with argument addressing Father's ongoing discovery disputes with third parties, which included his attempt to subpoena records from the pediatrician's office that the Children attend. The office's counsel appeared at the hearing and maintained she and the office's staff had spent "untold hours communicating" with Father. N.T., 1/25/21, at 21. Counsel indicated that Father received the Children's medical records, as well as records of her personal communications with Mother. *Id.* at 22-23. Father still was not satisfied, counsel explained, and sent her "what looked like interrogatories with . . . 30, 40 questions that he was demanding that I answer, and I didn't respond, and now he subpoenaed me to be here today." *Id.* at 23. She cautioned the office "can't afford to stay in these battles. And so if [Father] is permitted to keep serving subpoenas and to keep harassing [the office] and to keep harassing me, they're going to have to say they can't care for these children anymore." *Id.*

The record indicates Father's litigious tendencies manifest even outside of court in personal communications with Mother. The parties send messages to one another using the "Our Family Wizard" electronic system. During her testimony, Mother reported Father had sent her approximately two thousand one hundred messages since the parties began using Our Family Wizard in February 2018, which amounted to an average of fifty-eight messages per month. N.T., 2/19/21, at 141-42. The messages were often lengthy. Father

acknowledged that his messages sometimes contain twenty or more questions for Mother to answer. *Id.* at 220; 1/26/21, at 191-92; N.T., 3/15/21, at 261. The parties' custody evaluation, which the trial court admitted into evidence, and some of which Mother read while testifying, described Father's messages as "very inappropriate and not conducive to reciprocal communication. His questions are often demanding, numerous, numbered, have an accusatory tone, and contain deadlines by which [Mother] is to provide the information. His communication style can be described as nothing short of adversarial." N.T., 3/16/21, at 236-37. While Father sometimes invites Mother to joint activities, the evaluation added, the invitations to these activities frequently appear "in lengthy messages that are replete with accusations, insults, and demeaning language." *Id.* at 239.

Perhaps the most troubling aspect of Father's litigiousness is the way in which he has attempted to use the courts to impair Mother's relationship with the Children. The record reveals that Father filed a series of unfounded child abuse reports against Mother, apparently prior to the entry of the final May 3, 2019 order in Philadelphia. N.T., 3/16/21, at 147-49, 221-225, 239-40. The May 3, 2019 order is replete with findings regarding these reports. *See*, *e.g.*, Order, 5/3/19, at 6 ("Father has repeatedly abused child protective services . . . in attempts to secure tactical advantages in this custody litigation and to attempt to circumvent interim custody orders. All child protective services . . . have found allegations of abuse unfounded.") (unnecessary capitalization

omitted). Father persisted, nevertheless, in defending this behavior and characterizing Mother as an abuser during the hearings in the matter at bar. **See** N.T., 3/15/21, at 18-21; N.T., 3/16/21, at 76, 270. Even before this Court, Father asserts in his brief and reply brief that Mother engaged in abuse. **See** Father's Brief (1703 EDA 2021) at 7, 16, 37, 78; Father's Reply Brief (1703 EDA 2021) at 11-12, 36-38, 51, 58 (unnumbered pages).

Ultimately, Section 5328(a)(13) directs that trial courts consider "[t]he level of conflict between the parties and the willingness and ability of the parties to cooperate with one another" when rendering a custody award. 23 Pa.C.S.A. § 5328(a)(13). Our review of the record amply supports the court's conclusion that this is a high-conflict case with poor cooperation between the parties, due primarily to Father's litigiousness. Thus, it was within the court's discretion to award sole legal and primary physical custody of the Children to Mother. **See P.J.P. v. M.M.**, 185 A.3d 413, 420 (Pa. Super. 2018) (affirming the trial court's award of primary physical custody to the appellee where the record supported the court's finding that "the high level of conflict between [the parties'] would make a shared custody arrangement untenable. . . . The record confirms that they struggle to communicate with each other, and have been unable to resolve their interpersonal disputes.").[13]

_____

[13] In the July 16, 2021 order, the trial court granted Father's request that the Children attend his family's preschool and camp program in part, in that it
*(Footnote Continued Next Page)*

In Father's third claim, he contends that the trial court erred by failing to rule "meaningfully" on his contempt petitions, by failing to find Mother in contempt, and by failing to award him "make-up time and filing fees." Father's Brief (1703 EDA 2021) at 11, 28. The first portion of Father's claim fails, as the court expressly denied his contempt petitions. *See* Order, 7/16/21, at 8-9 ("[W]e are denying all petitions for contempt . . . . This order resolves *all outstanding pleadings* . . . filed by either of the parties . . . before the date of this order[.]") (unnecessary capitalization and emphasis omitted, italics in original). We conclude Father waived the remainder of this claim by failing to develop it a manner capable of appellate review.

Here, Father filed four contempt petitions and two amended contempt petitions, which were at issue when the trial court entered its order of July 16, 2021. He fails to specify in the argument section of his brief, however, which of his several petitions his argument pertains to, what the relevant allegations of contempt were, and how the evidence at the hearing was such that the court abused its discretion by not finding contempt. Instead, Father indicates

---

directed that the Children attend the camp program at least three weeks each summer and be allowed to attend the preschool during Father's custodial time. Order, 7/16/21, at 3. Father appears to argue, in relevant part, that the court should have ordered the Children to attend the camp for eight weeks each summer and to attend the preschool full time. Father's Brief (1703 EDA 2021) at 81-87. Given the court's observations regarding the parties' high-conflict relationship, and its award of sole legal and primary physical custody to Mother, we discern no abuse of discretion by the court in deciding to limit the amount of time the Children would need to spend at the preschool and camp program Father's family operates.

that he will provide "some highlights of Mother's contemptuous behavior" and then goes on for roughly **fifty pages** listing, often with repetition, seemingly everything he can think of that Mother has done to upset him since the parties separated. Father's Brief (1703 EDA 2021) at 29-81. Father's contempt claim is incomprehensible, and this Court will not act as his counsel by scouring the record, comparing his myriad contempt allegations against the five days of testimony in this case, and developing a clear argument for him. *See Krauss*, 104 A.3d at 584; *Schenk v. Schenk*, 880 A.2d 633, 639 (Pa. Super. 2005) (quoting *Hayward v. Hayward*, 868 A.2d 554, 558 (Pa. Super. 2005) ("'[I]t is not the duty of the Superior Court to scour the record and act as appellant's counsel, and we decline to do so.'").

Father argues in his fifth claim that the trial erred by failing to "equitably distribute" the parties' "financial obligations and holiday time" in its July 16, 2021 order. Father's Brief (1703 EDA 2021) at 11. Father complains Mother does not earn a significant income but works for free at a daycare in exchange for the Children's attendance as well as part-time for a caterer. *Id.* at 87-91. Because of this, Father argues, he is burdened with child and spousal support obligations, provides the Children's health insurance, and pays other expenses as well. *Id.* at 89-91. Father also requests changes to the order's holiday schedule, asserting primarily that he should receive additional holiday time with the Children, and that Mother's holiday time should be reduced. *Id.* at 91-94.

It is important to emphasize the only matter presently before this panel is the parties' child custody dispute. To the extent Father complains about his child or spousal support obligations, the order on appeal does not govern those matters, and we may not consider them. Further, to the extent he complains about his financial burdens in this custody case, the only burden the July 16, 2021 order appears to impose on Father is that he provide the Children with health insurance. *See* Order, 7/16/21, at 8. Father did not oppose providing insurance for the Children at the custody hearing and complained that Mother was using her own health insurance for the Children rather than his. *See* N.T. 2/19/21, at 136 (Father testifying, "her not using my private health insurance is another way of restricted parenting and not giving access so I don't get the summaries of the appointments."). Therefore, the health insurance provision in the July 16, 2021 order essentially grants relief that Father requested during these proceedings.[14]

As for Father's complaints regarding the holiday schedule, our review of the trial court's order reveals the court crafted a reasonably balanced division of holiday time. The parties alternate all secular holidays. Regarding religious

---

[14] We also note that Father's complaint regarding Mother's failure to earn a significant income is perplexing, given Father does not appear to earn any income at all. Father testified he suffered injuries in 2019, which impair his ability to work as a software developer. N.T., 3/16/21, at 54, 68. According to Father, these include injuries to his elbow, wrist, and back, which prevent him from sitting and typing for long periods. *Id.* at 65-68. Father conceded, despite this, that he had not earned "any money from working" since 2014, long before the injuries occurred. *Id.* at 21.

holidays, Father is Jewish, while Mother is Catholic. Thus, the court awarded Jewish holidays to Father and Catholic holidays to Mother. The court awarded more time to Mother during each Catholic holiday than it did to Father during each Jewish holiday and provided Catholic holidays would take precedence if a Catholic holiday and Jewish holiday coincide.[15] The apparent reason for this disparity is that there are more Jewish holidays on the schedule than Catholic holidays. Specifically, the court awarded Father Passover, Rosh Hashanah, Yom Kippur, and Hanukkah, while awarding Mother Easter and Christmas. If no holidays coincide, this results in Father having one hundred and forty-four hours of religious holiday time during a given year, and Mother's having one hundred and fifty-one hours of religious holiday time. As the holiday schedule is generally equitable, we discern abuse of discretion.

Next, Father's interrelated sixth and seventh claims are that the trial court erred by denying his "Motion to Extend Time for Contempts," and limiting his presentation of evidence during the hearing.[16] The substance of Father's claims is that the five-day custody hearing the court conducted in this matter

---

[15] More precisely, if Christmas and Hanukkah coincide, Christmas would take precedence, but Father would receive an extra day of custody during the noncoinciding portion of Hanukkah. If Easter and Passover coincide, Easter would take precedence, except that Passover would take precedence over Mother's custody on Easter Monday.

[16] Father filed his "Motion to Extend Time for Contempts" during the hearing on February 19, 2021, and the trial court denied the motion on the record. N.T., 2/19/21, at 137.

was inadequate for him to present his case. Father's Brief (1703 EDA 2021) at 94-96. Father waived these claims by failing to develop them in his brief with citations to relevant legal authority. *See M.Z.T.M.W.*, 163 A.3d at 465.

Even if Father had not waived these claims, we would conclude they are meritless. It is within the sound discretion of the trial court to admit or exclude evidence. *In re A.J.R.-H.*, 188 A.3d 1157, 1166-67 (Pa. 2018). Our Rules of Evidence direct, moreover, that courts "should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to[,]" in relevant part, "(1) make those procedures effective for determining the truth; [and] (2) avoid wasting time[.]" Pa.R.E. 611(a)(1)-(2).

Here, we see no basis to conclude the five-day hearing in this matter was inadequate for the trial court to hear the relevant evidence and reach an appropriate decision. What Father fails to acknowledge in his brief is that the hearing was originally scheduled to last only two days. *See* Amended Order – Triage Resolution, 12/23/20 (scheduling the parties' dispute for "a two [] day protracted hearing"). At the hearing, the court cautioned Father it would not grant excessive continuances. *See* N.T., 1/26/21, at 115 ("But I'm just telling you now, I'm not scheduling this hearing out three or four more days."). The court later relented and extended the matter **for an additional three days to accommodate Father**. Of the five-day hearing that resulted, Father spent about four days presenting evidence, while Mother spent about one.

Although Father may have preferred to have an even longer hearing, it was well within the court's discretion to limit the case to five days.

In Father's eighth issue, he argues that the trial court erred by declining to recuse itself. Father does not develop this argument in his brief but merely directs our attention to argument he presented in his petition for recusal.[17] Father's Brief (1703 EDA 2021) at 96-97. Thus, Father has waived this claim. *See M.Z.T.M.W.*, 163 A.3d at 465; *Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011) ("[O]ur appellate rules do not allow incorporation by reference of arguments contained in briefs filed with other tribunals, or briefs attached as appendices, as a substitute for the proper presentation of arguments in the body of the appellate brief.") (footnote omitted).

Had Father not waived this claim, it would be meritless. We review the trial court's decision not to recuse for an abuse of discretion. *In the Interest of D.R.*, 216 A.3d 286, 292 (Pa. Super. 2019), *affirmed*, 232 A.3d 547 (Pa. 2020) (quoting *In re A.D.*, 93 A.3d 888, 892 (Pa. Super. 2014)). Our review of the court's decision is "exceptionally deferential." *Id.* We recognize that the court itself is the best judge of its own impartiality, and that a court should recuse "only if a doubt exists as to [its] ability to preside impartially or if impartiality can be reasonably questioned." *Id.*

---

[17] Father also filed this petition during the hearing on February 19, 2019. The trial court denied it on the record. N.T., 2/19/21, at 137-40.

We have thoroughly reviewed the record in this case and have no reason to believe that the trial court harbored any partiality against Father. Father's argument in his petition for recusal consisted generally of complaints that the court made rulings or was conducting the matter in a way he did not like. This Court has stated, contrary to Father's position, that "simply because a judge rules against a [party] does not establish bias on the part of the judge against that [party]." *Lewis v. Lewis*, 234 A.3d 706, 722 (Pa. Super. 2020) (quoting *Commonwealth v. McCauley*, 199 A.3d 947, 951 (Pa. Super. 2018)). Our review confirms the court treated Father respectfully, granted him latitude throughout the hearing, and demonstrated exemplary patience. As discussed above, the court even held a hearing that was more than twice its originally scheduled length to accommodate Father's presentation of his case. This resulted in Father's taking roughly four days to present evidence and Mother's taking roughly one. Father's suggestion that the court conducted the matter in a way that was biased against him is baseless.

Finally, Father maintains in his interrelated ninth and tenth issues that the trial court erred by denying his motions *in limine* to exclude any evidence regarding his suspended driver's license and failure to pay spousal or child support. *See* Father's Brief (1703 EDA 2021) at 97-100. Father waived these claims by failing to develop them in his brief with citations to relevant legal authority and relying in part on arguments he made in his motions *in limine*. *See M.Z.T.M.W.*, 163 A.3d at 465; *Briggs*, 12 A.3d at 343.

We would conclude once again, however, that Father's claims lack merit even if he had not waived them. "When reviewing a trial court's determination on motions *in limine*, we apply an abuse of discretion standard." ***Davis v. Borough of Montrose***, 194 A.3d 597, 606 (Pa. Super 2018) (citing ***Turner v. Valley Hous. Dev. Corp.***, 972 A.2d 531, 535 (Pa. Super. 2009), *reargument denied* (June 23, 2009)).

Father argued in his motions *in limine* that his suspended driver's license and failure to pay support had no relevance to the custody proceedings. ***See*** Pa.R.E. 401 ("Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."). Alternatively, he argued unfair prejudice, confusion of the issues, and the potentially misleading nature of the evidence warranted its exclusion. ***See*** Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury[.]"). Father further proposes in his brief that his legal counsel in other matters instructed him not to disclose his failure to pay support, and that forcing him to do so violated his right to due process and attorney-client privilege. Father's Brief (1703 EDA 2021) at 98.

Father's argument is disingenuous. Father filed his motions *in limine* on March 12, 2021. Strikingly, though, Father himself first introduced evidence of his suspended license, and the fact that it resulted from a support issue,

**one-and-a-half months earlier** on the first day of the hearing, January 25, 2021. Father raised his suspended license in his opening statement and then presented extensive testimony addressing the issue. *See* N.T., 1/25/21, at 85, 89-158, 166-77. Father's motions *in limine* advanced the argument, in effect, that he should be allowed to present evidence as to his suspended license and failure to pay support, but Mother should not.

It is important to add that the admission of evidence regarding Father's suspended driver's license worked in his favor. In its findings of fact, the trial court observed that Mother had acted vindictively by notifying the police at a custody exchange that Father's license was suspended when she knew this resulted from failure to pay support and not from a safety issue. *See* Findings of Fact, 7/16/21, at 4-5. The court used this incident as an example of how Father was "not alone" in his failure to coparent, and why Mother was also to blame. *Id.*

Based on the foregoing analysis, we conclude Father's appeal at 1703 EDA 2021 is also meritless, and we affirm the July 16, 2021 order.

**CONCLUSION**

After review of the lengthy record in this matter, we conclude the trial court did not commit an error of law or abuse of discretion. We, therefore, affirm the June 16, 2021, and July 16, 2021 orders. We also deny Father's "Motion for Reconsideration" of our order consolidating these appeals.

J-A03003-22
J-A03004-22

Orders affirmed. Motions for reconsideration denied.[18]

Judgment Entered.

*Joseph D. Seletyn*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/10/2022

---

[18] We previously disposed of Appellant's Applications for Relief and Amended Application for Relief filed on December 9, 2021, and December 13, 2021. ***See*** Order, 3/21/22.

On March 29, 2022, Appellant filed an Application for Emergency Relief, which we addressed in our April 4, 2022 Order. In our 4/4/22 Order, we directed Appellant to provide four flash drives containing copies of Appellant's exhibits. Appellant timely complied.

Based on our review of the record, it appears the "missing" exhibits are in fact part of the official record forwarded to us by the trial court. ***See*** 2019-06877-0253 Petition and accompanying exhibits, and 2019-06877-0266 Emergency Family Petition and accompanying exhibits. Additionally, Appellant attached the same missing exhibits to his reply brief. Thus, the record is complete. To the extent some of the exhibits are missing, as Appellant claims, the incompleteness of the record is attributable to Appellant's inability to comply with the trial court's clear instructions regarding introduction of evidence, and the confusion resulting from overwhelming the trial court with a plethora of filings, all affected by excessive verbosity, and unnecessary redundancy.